

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT KLEBANOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 04 C 5878 |
| | ) | |
| MICHAEL F. SHEAHAN, individually and | ) | |
| as Sheriff of Cook County; CALLIE BAIRD, | ) | |
| individually and as Department of Corrections | ) | |
| Director, FNU SMITH, Cook County Corrections | ) | |
| Officer; UNKNOWN CORRECTIONS | ) | |
| OFFICERS 1, 2, & 3, Cook County Corrections | ) | |
| Officers; and COOK COUNTY, as indemnitor, | ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Robert Klebanowski alleges that Cook County Corrections Officers failed to protect him from harm while he was a pre-trial detainee at the Cook County Jail. Klebanowski, while a pre-trial detainee, has a Fourteenth Amendment Due Process right to be free from harm. *See Brown v. Budz*, __ F.3d __, No. 03-1997, 2005 WL 356807, *2 (7th Cir. Feb. 16, 2005). In his one-count Complaint, Klebanowski alleges the Corrections Officers deprived him of that Constitutional right, by placing him at "substantial risk of serious harm" with "deliberate indifference" toward his safety. Klebanowski claims that the Defendants violated 42 U.S.C. § 1983 by depriving him of his Constitutional right to be free from harm. Defendants seek to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim. For the reasons set forth below, the Court grants in part and denied in part the motion.

## BACKGROUND[1]

Plaintiff, Robert Klebanowski, is a 25 year old resident of the City of Chicago and currently an inmate at Menard Correctional Center in Menard, Illinois. (R.1-1, Compl. ¶ 3.) Prior to his incarceration at Menard, Klebanowski awaited trial at the Cook County Jail, where he was assigned to Division 11, Unit B-C. (*Id.* ¶ 5.) According to Klebanowski, Division 11, Unit B-C is a direct supervision wing and a corrections officer is required to be present at all times. (*Id.* ¶ 7.)

Klebanowski alleges, however, that gang members effectively controlled his wing. (*Id.* ¶ 5.) According to Klebanowski, the corrections officers permitted the gang members to do as they pleased, including harass, threaten, and order other inmates to provide them with cigarettes and items from the commissary. (*Id.* ¶ 5.) The officers also permitted the gang members to keep improper items, such as weapons in their cells and on their persons. (*Id.* ¶ 6.) Finally, Klebanowski alleges that the corrections officers, who were required to be on duty at all times, would frequently announce they were leaving and open all the cell doors, allowing the inmates to move around freely. (*Id.* ¶ 7.)

On September 8, 2002, three self-avowed gang members allegedly approached Klebanowski and demanded that he give them his commissary or they would beat him. (*Id.* ¶ 8.) After refusing their request, with no corrections officers present, the inmates allegedly beat Klebanowski with their hands and feet. (*Id.* ¶¶ 9-10.) After the attack, they told him that they would kill him if he told the authorities what happened or refused to forfeit his commissary again. (*Id.* ¶ 11.) Thus, when an unknown female corrections officer returned to the wing,

---

[1] For purposes of this motion, the Court assumes the allegations in the Complaint are true.

but did not implicate any of the gang members. (*Id.* ¶ 12.) The corrections officer sent Klebanowski to Cook County Hospital where the staff treated him for multiple injuries, including, a black eye, a broken nose, and a laceration to his ear. (*Id.* ¶ 13.)

Upon his return to the Jail, two unknown corrections officers ("Officers 1 & 2") took Klebanowski back to his cell, where, for the first time, Klebanowski indicated to Officers 1 & 2 and FNU Smith, a corrections officer, that the three gang members attacked him. (*Id.* ¶¶ 13-14.) The officers allegedly responded by telling Klebanowski that they knew who had attacked him, and ridiculed Klebanowski by telling him that the gang members would likely beat him again and that they were not going to protect him. (*Id.* ¶ 14.) At this point, Klebanowski pleaded with a fourth corrections officer ("Officer 3") for a transfer. (*Id.* ¶ 15.) Officer 3, however, refused his transfer request because the officer did not want to do extra work, and, nonetheless, the other wings did not have any available space. (*Id.* ¶ 16.)

The next evening, on September 9, 2002, Officer Smith was working the 3 p.m. to 11 p.m. shift in Division 11, Unit B-C. At approximately 9:20 p.m., Officer Smith opened all the cell doors, permitting the inmates to move around freely. (*Id.* ¶¶ 17-18.) Although the mandatory lock-up time for Klebanowski's wing was 9:30 p.m., Officer Smith did not return until shortly before 10:00 p.m. (*Id.* ¶ 18.)

At approximately 9:45 p.m., the three gang members who had attacked Klebanowski the day before allegedly began beating him again with their hands and feet and, in addition, stabbing him with homemade knives. (*Id.* ¶¶ 19-20.) In an effort to stop the attack, Klebanowski ran to a guard post and attempted to get Officer Smith's attention, however, Officer Smith was not present at his post. (*Id.* ¶ 20.) Next, Klebanowski jumped from the upper tier to the lower tier and pushed the "panic" button in a further effort to alert the guards of his plight. (*Id.* ¶ 21.)

3

During his attempts to alert the corrections officers, the three inmates continued to attack him. (*Id.* ¶ 22.) Finally, five minutes after hitting the "panic" button, corrections officers arrived on the scene and the gang members stopped their attack. (*Id.* ¶ 24.)

After the attack, an ambulance took Klebanowski to Mount Sinai Hospital, where he remained for six days. (*Id.* ¶ 26.) During his stay, the hospital staff, among other treatment, allegedly removed Klebanowski's spleen and placed twenty-five staples in his stomach. (*Id.* ¶ 26.) Klebanowski alleges that the corrections officers neither disciplined the gang members, nor attempted to locate the weapons used in the attack. (*Id.* ¶ 23.)

As a result of this incident, Klebanowski filed a one-count Complaint alleging that Officers 1, 2, 3, Officer Smith, Cook County Sheriff Michael Sheahan, Department of Corrections Director Callie Baird, and Cook County failed to protect him and, as a direct result, he suffered injuries. (*Id.* ¶¶ 1-37.) Klebanowski further alleges that the Corrections Officers, Sheahan, and Baird were acting in their official, as well as individual capacities. (*Id.* ¶ 4.)

## MOTION TO DISMISS STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When reviewing a motion to dismiss, the Court is restricted to reviewing the pleadings, which consist of the complaint, any attached exhibits, and the supporting briefs. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). In making its determination, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations

4

liberally, and view them in the light most favorable to the plaintiff. *Jet, Inc. v. Shell Oil Co.*, 381 F.3d 627, 629 (7th Cir. 2004).

## ANALYSIS

### I. Failure to Exhaust Administrative Remedies

Plaintiff Klebanowski alleges that Cook County Corrections Officers deprived him of his Constitutional right to be free from harm, thereby violating 42 U.S.C. § 1983. As Klebanowski notes, prison officials have a duty to take reasonable measures to guarantee the safety of inmates under the Eighth Amendment's prohibition on "cruel and unusual punishments." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 128 (1994); *Brown*, 2005 WL 356807, *2. Because Klebanowski was a pre-trial detainee at the time of alleged incident, rather than a state prisoner, his failure-to-protect claim arises under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, although there is little practical difference between the two claims. *Id.* at *4. To state a failure-to-protect claim, Klebanowski must allege that the corrections officers placed him at "substantial risk of serious harm" by acting with "deliberate indifference" toward his safety. *Farmer*, 511 U.S. 825, 834; *Brown*, 2005 WL 356807, *4.

Defendants argue that Klebanowski failed to comply with the requirements of the Prisoners Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, because he did not exhaust the prison's administrative remedies prior to instituting this action. Accordingly, Defendants contend that Klebanowski cannot state a claim under Section 1983, and move to dismiss his Complaint under Federal Rule of Civil Procedure 12(b)(6).

The PLRA provides, "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 of this title . . . by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1983(e)(a) (2000); *see also Booth v.*

5

*Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed. 2d 958 (2001); *Massey v. Helman*, 259 F.2d 641 (7th Cir. 2001). Under the PLRA, it is well-settled that a prisoner must exhaust all available administrative remedies before bringing a constitutional claim under Section 1983. *See Booth*, 532 U.S. at 740; *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Thus, courts have consistently required inmates to exhaust the available grievance procedures. *See Booth*, 532 U.S. at 741; *Zachary v. Smith*, 255 F.3d 446, 452 (7th Cir. 2001).

Courts have also interpreted the PLRA to require an inmate to complete the grievance process by following the specific rules and procedures established by the state. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The PLRA forecloses an inmate who does not properly take each step within the administrative process from litigating his claims. *Id* at 1024. Thus, a prisoner must file an appeal to his initial grievance whenever the prison has an administrative appeal process available to him. *See id* at 1025; *Lewis*, 300 F.3d at 833.

A prisoner, however, is only required to exhaust those administrative remedies that are "available" to him. *Lewis*, 300 F.3d at 833. As a result, where an administrative remedy is deemed "unavailable," the prisoner may still bring a lawsuit, notwithstanding the fact that he has not exhausted his administrative remedies. *See id.*; *Barrera v. Acting Executive Dir. of Cook County Dep't of Corr.*, 2003 WL 21976753, at *2 (N.D.Ill. Aug. 18, 2003). The PLRA does not define when a remedy is "available," thus the Court must look to the terms' plain meaning to determine if a prisoner can pursue any administrative remedies. 42 U.S.C. § 1997e(a); *Barrera*, 2003 WL 21976753, at *2. A prisoner does not have to file an appeal where prison officials do not respond to that prisoner's initial grievance because the appeal process is considered "unavailable." *Lewis*, 300 F.3d at 833; *Barrera*, 2003 WL 21976753, at *2. Indeed, the Seventh Circuit has "refuse[d] to interpret the PLRA so narrowly as to permit prison officials to exploit

the exhaustion requirement through indefinite delay in responding to grievances." *Lewis*, 300 F.3d at 833 (internal quotation marks omitted).

Defendants argue that Klebanowski did not appeal his grievance pursuant to the Cook County Department of Corrections' ("CCDOC") well-established grievance procedure, thus he has failed to exhaust his administrative remedies. In ruling on Defendants' motion, this Court must construe the allegations in the Complaint liberally and view those allegations in the light most favorable to the Plaintiff. *See Jet, Inc.*, 381 F.3d at 629. Klebanowski has alleged that on September 18, 2002, he filed a detainee grievance with the CCDOC and that he understood that his grievance was under investigation. Defendant never received any response to his inquiries, and his initial grievance has never been denied. Klebanowski waited two years before assuming his remedies were exhausted and instituting this action. Taking these allegations as true, the Court concludes that Klebanowski did not have an administrative appeal "available" to him and denies the Defendants' motion to dismiss. *See e.g., Smith v. Boyle*, No. 02 C 2788, 2003 WL 174189 (N.D. Ill. Jan. 27, 2003).

## II. The Sheriff in His Individual Capacity

Plaintiff Klebanowski alleges that Defendant Sheahan, Sheriff of Cook County, is liable in both his individual and his official capacities for violating Klebanowski's constitutional rights. Sheahan argues that Klebanowski cannot state a claim against him in his individual capacity, and, accordingly, moves to dismiss the claim. The Court agrees and dismisses the claim against Sheahan in his individual capacity.

Section 1983 creates a federal cause of action for "the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983; *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068, 129

L.Ed.2d 93 (1994). For an individual to be liable under Section 1983, he or she must have personal involvement in the decision-making allegedly amounting to a violation of the plaintiff's constitutional rights. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (holding that Marion County Sheriff could not be liable to plaintiff, who was attacked by fellow inmates, because he was not personally involved in the alleged deprivation). Thus, in order for Sheahan to be liable under Section 1983, Klebanowski must allege that Sheahan "acquiesced in some demonstrable way to the alleged constitutional deprivation." *Palmer*, 327 F.3d at 594.

Here, Klebanowski alleges that Officers 1, 2, 3, and Officer Smith put him at substantial risk of serious harm by returning him to his wing after he told them the three gang members attacked and threatened him. Klebanowski further alleges that these four officers acted with deliberate indifference to his constitutional right to be free from attack by refusing to transfer him, refusing to transfer the three gang members, and failing to discipline the gang members in a way that would thwart a future attack. Klebanowski, however, does not allege that Defendant Sheahan knew of the initial attack on Klebanowski or was even aware of the corrections officers' subsequent decisions, such as refusing to transfer Klebanowski or the gang members.

Rather, Klebanowski argues that Sheahan is liable because he was "aware of and permitted the widespread practices" of allowing gang members to do as they wanted. Even taking this allegation as true, Klebanowski has failed to allege that Sheahan was personally responsible or acquiesced in depriving Klebanowski of his constitutional rights. Accordingly, the Court dismisses Klebanowski's claim against Sheahan in his individual capacity.

## CONCLUSION

For these reasons, the Court grants Defendant Sheahan's motion to dismiss the Complaint against him in his individual capacity, but the Court denies Defendant Sheahan and Cook County's motion to dismiss the Complaint pursuant to the PLRA.

Date: March 10, 2005

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge