IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT KLEBANOWSKI, ) | |
| ) | Case No. 04 C 5878 |
| Plaintiff, ) | |
| ) | Judge Virginia M. Kendall |
| v. ) | |
| ) | |
| MICHAEL SHEAHAN, as Sheriff of Cook ) | |
| County; CALLIE BAIRD, individually and as ) | |
| Department of Corrections Director and her ) | |
| predecessor ERNESTO VELASCO; HENRY ) | |
| TROKA, individually and as Superintendent of ) | |
| Division XI Cook County Jail; Cook County ) | |
| Corrections Officers JERMAINE SMITH; ) | |
| Badge No. 7677; WILLIAM SCOTT, Badge ) | |
| No. 5968; RAFAEL TREVIZO, Badge No. ) | |
| 7590; CLIFFORD SMITH, Badge No. 6426; ) | |
| and COOK COUNTY, as indemnitor, ) | |
| ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Robert Klebanowski ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 1983 alleging that three officials of Cook County government ("Official Defendants") and four individual Cook County Corrections Officers[1] ("Individual Defendants" and together with Official Defendants "Defendants") violated his constitutional rights by failing to protect him from physical harm while housed in the Cook County Jail. Defendants have moved for summary judgment on all counts. Because Plaintiff cannot show that any of the Defendants were deliberately indifferent to a significant risk of harm to Plaintiff, Defendants' motion for summary judgment is granted.

---

[1] Plaintiff admits that he does not have evidence that Officer Clifford Smith was involved in the incidents in question. Plaintiff represents that he will dismiss Officer Clifford Smith from the case. Pl. Resp. at 8 n.5. Therefore, Defendant Officer Clifford Smith is dismissed.

**Facts**

The following facts are undisputed. In September 2002, Plaintiff was incarcerated in "Tier BC" of "Division XI" of the Cook County Correctional Center (the "Jail"), awaiting trial. Defendant's Statement of Material Uncontested Facts Pursuant to Rule 56(a)(1) at ¶ 6, 12 (hereafter "Def. 56.1 at ¶ __"). Plaintiff is not a member of a gang; he is a "neutron." Plaintiff's Local Rule 56.1(b)(3)(B) Additional Facts at ¶ 2 (hereafter "Pl. 56.1 at ¶ __"). The Cook County Correctional Center does not have a policy or practice of housing "neutrons" separately from gang members. Pl. 56.1 at ¶ 28.

On September 8, at approximately 1 p.m., three gang members, "Little E," "Count," and "Yo-Yo," approached Plaintiff while he was in the dayroom and no officers were present. Def. 56.1 at ¶¶ 13-14, Pl. 56.1 at ¶ 6. When Plaintiff refused to pay the men, the men pushed Plaintiff into a cell and beat him. Def. 56.1 at ¶¶ 13-14, Pl. 56.1 at ¶ 3. Prior to this incident, Plaintiff had never interacted with the three men. Def. 56.1 at ¶ 15. After the incident, a female correctional officer took Plaintiff to dispensary in Division XI, and asked Plaintiff what had happened. Def. 56.1 at ¶¶ 16-18. Plaintiff told the correctional officer that he had "slipped in the shower." *Id.* He repeated this story to personnel in the dispensary, who treated Plaintiff with stitches in his ear. *Id.*, Pl. 56.1 at ¶ 8. When Plaintiff returned to the cellblock in Division XI later that day, he told several unidentified officers that he wanted to move out of Division XI because he was scared. Def. 56.1 at ¶ 19, Pl. 56.1 at ¶¶ 9-10. Plaintiff was not moved out of Division XI on September 8. Def. 56.1 at ¶ 19-20.

On September 9, at approximately 9:45 p.m., the same three men from the September 8 assault approached Plaintiff from behind while Plaintiff was watching television on the top tier, and stabbed Plaintiff in the stomach. Def. 56.1 at ¶¶ 20-21. Plaintiff escaped from the three attackers

and pressed the panic button in the tier, but five minutes passed before any corrections officers responded. Pl. 56.1 at ¶ 19. Shortly after the incident, officers conducted a "shakedown" of the tier where the incident occurred, recovering 14 makeshift knives or shanks. Pl. 56.1 at ¶ 30.

**Discussion**

Summary judgment is appropriate where there is no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the non-moving party cannot rest on its pleadings, but must use evidentiary tools - depositions, answers to interrogatories, and affidavits that are part of the record - to show specific facts creating that a genuine issue for trial. *Id.* at 324. A material fact is a fact that is outcome-determinative under the governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The court must construe all facts in a light most favorable to the non-moving party, and must view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

Because Plaintiff was incarcerated prior to his trial, Plaintiff brings his claim under the Due Process Clause of the Fourteenth Amendment, rather than the prohibition against cruel and unusual punishment embodied in the Eighth Amendment. *Frake v. City of Chicago*, 210 F.3d 779, 781 (7th Cir. 2000). There is little practical difference between the standards under the Eighth and Fourteenth Amendments for failure to protect claims, and § 1983 claims brought under the Fourteenth Amendment are analyzed under the Eighth Amendment test. *Brown v. Budz*, 398 F.3d 904, 910(7th Cir. 2005); *Velez v. Johnson*, 395 F.3d 732, 735 (7th Cir. 2005). In order to establish a failure to

protect claim, a plaintiff must show the conditions of his detention posed a substantial risk of serious harm, and that prison officials acted with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). A showing of "deliberate indifference" requires the official to have known about a "substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect [the detainee] from a known danger." *Frake*, 210 F.3d at 781.

*Sheahan, Baird, and Troka - Official Defendants*

Plaintiff brings suit against Official Defendants (Sheahan, Baird and Troka) solely in their official capacities as Sheriff of Cook County, Department of Corrections Director, and Superintendent of Division XI of Cook County Jail, respectively. Official Defendants move for summary judgment because Plaintiff has produced no evidence of a custom or policy, known to the municipalities, that either contributed to the Plaintiff's injury or failed to prevent a substantial risk of injury. Because Plaintiff cannot make the required showing that Officials Defendants permitted a custom or policy to persist in the Cook County Jail, or had notice of substantial risk of harm and failed to devise policies to prevent that harm, the Court grants summary judgment to Official Defendants.

In order to establish the liability of a municipality under § 1983, Plaintiff must show that "deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Frake v. City of Chicago*, 210 F.3d 779, 781 (7th Cir. 2000), *quoting Board of County Comm'rs v. Brown*, 520 U.S. 397, 415 (1997). Further, because the complaint has been filed against municipal officials in their official capacities, the Plaintiff must be able to show that the municipality, and not just individual employees, "made a deliberate choice among various alternatives and that the injury was caused by the policy." *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002), *quoting Frake*, 210 F.3d at 781. A unconstitutional "policy" can be 1) an express policy; 2) a widespread practice that

4

is so permanent and well settled as to be a "custom or usage" with force of law; or 3) an allegation that a person with final policy-making authority caused the injury. *Id.* There also must be "an affirmative link" between the policy and the particular constitutional violation alleged. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Plaintiff produces no supporting evidence of a practice or policy in the Jail, or supporting evidence of direct involvement by Official Defendants in Plaintiff's injury. Rather, Plaintiff relies on the general allegation stated in his complaint, without support, that the Jail has no "policy" of separating neutrons from gang members. Pl. Resp. at 4-5. Plaintiff alleges that Official Defendants' failure to take the preventative step to separate neutrons and gang members demonstrates deliberate indifference. But Plaintiff has produced no evidence about any incident other than his own, about any person's gang affiliation other than his own, about any knowledge on the part of any official about general gang affiliation in the jail, or about any steps taken or not taken to prevent violence between gang members and non-gang members in the jail.

Even taking all of Plaintiff's deposition testimony as true, Plaintiff's single incident does not show evidence of a policy sufficient to establish liability. *City of Oklahoma City*, 471 U.S. at 823 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident also includes proof that it was caused by an existing, unconstitutional municipal policy"); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 531 (7th Cir. 2000) (same). In the end, the only evidence presented by either party in this case is (i) the deposition of Plaintiff concerning the circumstances of his own injury, (ii) the Cook County Jail rules and regulations for detainees, (iii) job descriptions of officers in the Jail, and (iv) statements of Individual Defendants made during an investigation of the circumstances surrounding Plaintiff's particular injury. None of this evidence involves the general policies or practices in the Jail, or

5

substantiates the allegations against Official Defendants. Because Plaintiff may not rest on the pleadings in order to survive summary judgment, summary judgment is granted in favor of Official Defendants.[2]

*The Individual Defendants*[3]

In addition to the three Official Defendants, Plaintiff has sued three Individual Defendants, all prison officials, for their alleged involvement with the events of September 8 and 9. But not every injury suffered by one prisoner at the hands of another prisoner creates constitutional liability for individual prison officials; the prisoner must show that the conditions of his incarceration created a "substantial risk of serious harm" and that the individual officers were deliberately indifferent to that risk. *Farmer*, 511 U.S. at 834. In order to show that an individual officer has been "deliberately indifferent" to the risk to a pre-trial detainee, the Plaintiff must show that an individual officer had knowledge of that risk and failed to take reasonable measure to abate it. *Id.* at 837; *see also Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005). The "deliberate indifference" standard is akin to the criminal standard of recklessness. *Farmer*, 511 U.S. at 837; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 259 (7th Cir. 1996). Negligence, or even gross negligence, does not constitute deliberate

---

[2]Plaintiff requests in his Response to Defendants' Motion for Summary Judgment that in the event the Court finds that Plaintiff has not demonstrated the existence of a policy regarding neutrons, he be permitted an extension of discovery to obtain such evidence. Plaintiff cites to *Jones v. Sheahan*, 2003 WL 22508171 (N.D. Ill. Nov. 4, 2003) (Schenkier, M.J.) in support of his position that the neutron/gang "policy" has gone before a jury in this district. The opinion in *Jones*, however, addressed a motion to overturn a jury verdict after a trial in which evidence of such a policy had been admitted. As *Jones* went before a jury, the Court assumes that any dispositive motions filed in that case prior to trial contained sufficient evidence to establish a genuine issue of material fact. Plaintiff has presented no evidence of a genuine issue of material fact here. *Jones* was decided in 2003, a year before Plaintiff filed this case; if Plaintiff wished to obtain similar evidence to that presented at trial in *Jones*, he could have done so during the year of discovery in this case, or moved for an extension of discovery prior to the filing of dispositive motions.

[3]In addition to the deliberate indifference arguments, Defendants raise an independent procedural argument that any of the claims against Individual Defendants are time-barred because Plaintiff failed to add Individual Defendants as named defendants within 2 years of the events in question, thereby passing the statute of limitations on his § 1983 claim. Because the Court finds that Plaintiff can show no genuine issue of material fact as to the merits of his claims, the Court need not reach the issue of timeliness.

indifference, but the plaintiff need not show a purposeful intent to harm. *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 926 (7th Cir. 2004).

An officer's knowledge of impending harm may be shown by two methods: (i) proof that Plaintiff complained to prison official about a "specific threat to his safety" or (ii) circumstantial evidence of the objective existence of a risk substantial enough that the officer's knowledge of it may be inferred. *See, e.g., McGill v. Duckworth*, 944 F.2d 344 (7th Cir. 1991) (discussing specific threats); *James v. Milwaukee County*, 956 F.2d 696, 700-01 (7th Cir. 1992) (discussing inference of substantial risk). As the record contains substantially more information with regards to one of the Individual Officers, Officer Jermaine Smith ("Officer Smith"), Officer Smith requires a separate analysis from Individual Officers Trevizo and Scott.

## Officer Smith

In order to survive summary judgment, Plaintiff must first be able to present evidence of facts such that a reasonable jury could find that the officer had knowledge of a substantial risk of harm and acted with deliberate indifference to the risk. *Brown v. Budz*, 398 F.3d at 909. Plaintiff may demonstrate that the officer knew about the risk either (i) because he told an officer about a "specific threat to his safety" or (ii) that the substantial risk of harm was objectively obvious such that the officer's knowledge could be inferred. *McGill*, 944 F.2d at 349; *see also Butera*, 285 F. 3d at 605. Plaintiff must then show that the officer disregarded the risk of which he was aware.

Plaintiff testified in his deposition that he told Officer Smith on September 9 that he was scared, that he feared for his life, that he would identify the persons who beat him if Officer Smith would transfer Plaintiff to another division. Pl. 56.1 at ¶ 15; Pl. Dep. at 68-69.[4] Plaintiff testified

---

[4] Plaintiff also states in his statement of material facts that Plaintiff spoke with "a black corrections officer in the office on the unit, who Plaintiff identified as Defendant Jermaine Smith" on September 8, after speaking with the unidentified officers standing outside the unit. Plaintiff cites to his deposition at pages 40-41 and 68-70. While Plaintiff's testimony shows that Plaintiff and Officer Smith spoke on September 9, it is not apparent from the deposition

that Officer Smith told him there was nothing he could do. *Id.* Plaintiff then testified that Officer Smith, who knew that Plaintiff had been beaten the previous day and that he was scared and requested a transfer, opened the doors to the cell block around 9:20 p.m. and announced that he would be leaving the unit and would be back to lock down the division. Pl. 56.1 at ¶ 16; Pl. Dep. at 46. It is undisputed that Plaintiff was attacked on September 9 around 9:45 p.m. while watching TV on the top tier. Def. 56.1 at ¶¶ 20-21. Defendants admit that after Plaintiff pushed the panic button in the unit, no corrections officers responded to the emergency call for five minutes. Pl. 56.1 at ¶ 19.[5]

Defendants object to Plaintiff's 56.1 ¶¶ 15-16 on the grounds that the statements are "inadmissible hearsay," citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994). The statements by Defendant Officer Smith are admissions of a party opponent, and therefore are not hearsay and will not be stricken on that ground. F.R.E. 801(d)(2). The statements of Plaintiff that he was scared, feared for his life, and would identify his attackers if transferred are likewise not hearsay, because none of the statements have been offered as evidence of the their truth. F.R.E. 801(d). Rather, they serve as evidence Plaintiff would present to meet the element that he provided notice to Officer Smith of the presence of a specific threat to his safety.

While Plaintiff may have been concerned for his safety when he spoke with Officer Smith, even viewing the evidence in the light most favorable to Plaintiff and assuming that the statements attributed to Officer Smith are accurate, Plaintiff's statements to Officer Smith are not indications

---

that the "black corrections officer" with whom Plaintiff spoke on September 8 was Officer Smith. *See* Pl. Dep. at 40 (describing the conversation with a black officer on September 8, "Q: Who is this guy? Do you know his name or anything? A: I don't know his name."); *see also* Pl. Dep. at 70 ("Q: [A]t what point in time, place, location did you talk to Jermane Smith? A: On Monday, September 9, he called me into his office on unit BC.")

[5]Defendants moved to strike all statements of the Individual Officers from the internal investigations on the basis that they are not sworn statements and therefore not admissible under Federal Rule of Civil Procedure 56(e). Because the statements of the officers in the investigative reports do not show any genuine issue of material fact, the Court does not reach the issue of their classification under Rule 56(e).

of a *specific threat*. In order to survive summary judgment, prisoners need to communicate to prison officials "actual notice of a *specific* risk of serious harm." *Butera*, 285 F.3d at 606 (finding that statements "I was scared," "I need to be removed" and "I needed off the block" insufficient to give notice of particularized threat). In *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997), the Seventh Circuit addressed a prisoner's claim that prison officials failed to protect him from a second gang-related attack. In granting summary judgment, the court stated:

> Neither, prior to the second attack, did Lewis specifically seek protection from the two inmates who assaulted him on that occasion, identify the twenty gang members who threatened him after the first [attack], or inform authorities of the threats which were made against him earlier in the day of the second attack. Therefore, Lewis did not demonstrate that the defendants had specific knowledge of a threat to Lewis by the inmates who assaulted him.

*Lewis*, 107 F.3d at 553. Like the plaintiff in *Lewis*, Plaintiff admits that he had never had any interaction with his assailants prior to September 8. Def. 56.1 at ¶ 15. If Plaintiff himself had no knowledge about the impending September 8 attack, he cannot prove that he told any of the officers of a specific theat that he would be attacked September 8. As for the September 9 attack, like the prisoner in *Lewis*, Plaintiff made general statements of his fear and his wish to be transferred, but admits that he did not identify his assailants or tell anyone of the threats made against him. Def. 56.1 at ¶¶ 16-18.

Rather, according to Plaintiff's deposition, he told the officer present after the September 8 attack that he had "slipped in the shower," and told the same story to the nurses who treated him for his initial injuries. Pl. Dep. at 30-31. Plaintiff did not tell Officer Smith, or indeed tell any other officer who treated his injuries while he was out of the prison and out of earshot of any of his assailants, the identities or the threats of the three individuals who harmed him n September 8. While the statements Plaintiff made to treating personnel may have been false, and while Plaintiff may have felt intimidated into silence, it cannot be implied that Officer Smith had actual knowledge

9

about the exchange between Plaintiff and the three men. The injuries that Plaintiff sustained is unfortunate, but nothing in the evidence presented by the Plaintiff shows that Officer Smith had actual knowledge of a specific threat that would be a substantial risk of serious harm, and then failed to act appropriately in response.

Plaintiff may also show deliberate indifference if he shows that there was an objectively substantial risk of harm to Plaintiff, and that Officer Smith failed to take steps to prevent that harm.[6] *See Estate of Cole*, 94 F.3d 254, 261 (7th Cir. 1996) (generally, "[a] jury may infer the subjective (awareness of a substantial risk) from the objective (obviousness of a risk)" in failure to protect cases). If Plaintiff were to try to show an obvious risk, it would be the fact that Plaintiff was a neutron housed in a population that included gang members. But even taking the record presented in the light most favorable to Plaintiff, the record does not show that the neutron/gang member concern was obvious or clear enough that a reasonable officer would know of a risk of substantial harm. An obvious risk can be shown by evidence that is "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that defendant-official being sued had been exposed to information concerning the risk." *Farmer*, 511 U.S. at 842-43 (finding that housing a transsexual male plaintiff wearing feminine clothing and breast implants in general male prison population created a potential obvious risk of assault that had been noted by prior prison officials); *see also Lewis*, 107 F.3d at 554 (plaintiff could not survive summary judgment on a theory of objectively known pervasive gang violence in prison when no evidence presented as to previous requests for custody, requests for gang separation, or gang violence); *cf Mayoral v. Sheahan*, 245 F.3d 934 (7th Cir. 2001) (denying summary judgment because evidence

---

[6]Plaintiff states in his response to Defendants' Motion for Summary Judgment that analysis of the obviousness of a risk is unnecessary because, for summary judgment purposes, Plaintiff has established that he actually informed Officer Smith. Pl. Resp. at 8. As Plaintiff did not establish actual knowledge by Officer Smith, however, the Court will examine the obviousness of the risk.

about individual plaintiff - when viewed in light of evidence that gang violence took place more than once a week - could be viewed by a jury as an objective risk).

Just as with Plaintiff's claims against Official Defendants, Plaintiff's claims as to an obvious risk of which Officer Smith (or any officer) should have been aware requires at least evidence of gang activity in the prison, other than Plaintiff's statement that he, personally, is a neutron, and that his assailants were gang members. As Plaintiff admits that he had no interaction with his assailants prior to September 8, even with additional evidence Plaintiff would likely be hard-pressed to show that he was at obvious risk of harm. Plaintiff does not even provide evidence that Officer Smith (or any other officer) knew that Plaintiff was housed with known gang members. While there can be an obvious risk to an inmate even if the specific assailant's identity is not yet known, that obviousness requires at least knowledge by the officers that the inmate's status puts him at heightened risk. *See, e.g.*, *Walsh v. Mellas*, 837 F.2d 789, 796 (7th Cir. 1988) (deliberate indifference where defendants knew that gang violence was a serious problem, defendants knew that gang posed serious risk of assault, and defendants knew plaintiff known to be a member of a group targeted by a gang). By contrast, here Plaintiff does not raise a genuine issue of material fact that any of the officers charged knew anything about affiliation in the jail.

Finally, even if Plaintiff could show a genuine issue as to a specific threat or an obvious risk of which Officer Smith was aware, Plaintiff cannot show that Officer Smith's actions on September 9 demonstrated deliberate indifference. Plaintiff testified that Officer Smith, who knew that Plaintiff had been injured the previous day, opened the doors to the cell block around 9:15 and announced that he would be leaving the unit and would be back to lock down the division. Pl. Dep. at 46. It is undisputed that Plaintiff was attacked around 9:45pm while watching TV on the top tier. Def. 56.1 at ¶¶ 20-21.

11

Plaintiff submitted several documents in support of his Rule 56.1 Statement of Additional Facts, including internal investigation records, the incident report from the September 9 attack, and the job functions of "Pod Control" and "Living Unit Officer." Defendants object to this evidence as either unsworn or inadmissible hearsay. Even assuming that these documents are admissible, however, the documentation hurts rather than helps Plaintiffs' claim that Officer Smith acted with deliberate indifference. Officer Smith stated in his investigation statement that he had left the cell doors open on September 9 at the time of the incident, and was not personally on the tier at the time the events took place. Pl. 56.1 at Ex. A. The record does not indicate Officer Smith's position at the center. If he were the Pod Control officer, according to Exhibit C submitted by Plaintiff, he would control the doors but would not be on the tier. If he were the Living Unit officer, according to Exhibit D submitted by Plaintiff, he would need to check the inmates every 30 minutes, not continuously. With the limited information provided by Plaintiff, the mere fact that the cell doors were open and Officer Smith was not on the tier at a given moment does not create a genuine issue of fact that Officer Smith acted indifferently to any risk of harm to Plaintiff.

As to Officer Smith's reaction to Plaintiff injury, Plaintiff admits that immediately after the attack the officers ordered a lockup of all inmates except Plaintiff, and took Plaintiff to the health care unit. Pl. Dep. at 53-54. Plaintiff also admits that after the September 9 attack, jail officials responded immediately by moving Plaintiff to a different division. Pl. Dep. at 58. Based on the facts presented in the record, Plaintiff cannot show that the actions of Officer Smith, or any of the officers on the tier, were out of the normal course of prison governance, or were deliberately indifferent to risk of harm to Plaintiff.

<u>Individual Officers Trevizo and Scott</u>

In addition to the statements about Officer Smith, Plaintiff also testified that he spoke with several officers as he returned from the dispensary after the attack on September 8. Plaintiff testified that he told the officers, congregated in the hallway outside the unit, that he was "scared" and wished to be transferred. Pl. Dep. at 36. Plaintiff admits that he did not tell those officers the specifics of what happened to him. Plaintiff testified that these officers, whom he could not identify, told him that they "already know [sic] what happened," and that it could happen anywhere in the building. Pl. Dep. at 36. Plaintiff does not remember the names of these officers, but described them physically.

Plaintiff presents no supporting evidence in the record to link the remaining Individual Defendants with the unidentified persons standing in the hallway on September 8. Plaintiff submitted several reports from an internal police examination, but these reports, even if admissible, do not identify the Officers Trevizo and Scott as the officers standing outside the division the afternoon of September 8. No reasonable jury could find on the paucity of evidence in the record that Officers Trevizo and Scott took action or failed to take action to protect Plaintiff on September 9, as Plaintiff has presented no evidence linking Officers Trevizo and Scott to the conversation of September 8, and no evidence that these persons were even working on September 9 when the cell doors were opened. Because there is no genuine issue of material fact as to Officers Trevizo and Smith, summary judgment is granted in their favor.

THEREFORE, Defendants' motion for summary judgment on all counts is granted, and judgment is entered in favor of Defendants.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Dated: May 22, 2006

13